UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANNIE L.,<br><br>        Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:17-CV-0439-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 16. Attorney Dana C. Madsen represents Annie L. (Plaintiff); Special Assistant United States Attorney Jeffrey E. Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On July 3, 2013, Plaintiff filed an application for Supplemental Security Income (SSI), alleging disability since January 1, 2011, due to depression, anxiety and Hepatitis C. Tr. 240, 265. Plaintiff's application was denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Glenn G. Meyers held a hearing on January 13, 2015. Tr. 38-48. ALJ Jesse K. Shumway held a supplemental hearing on August 25, 2016, Tr. 49-82, and issued an unfavorable decision on September 7, 2016, Tr. 20-32. The Appeals Council denied review on November 3, 2017. Tr. 1-5. The ALJ's September 2016 decision thus became the final decision of the

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on December 29, 2017. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on July 7, 1979, and was 31 years old on the alleged onset date, January 1, 2011. Tr. 240. She completed the tenth grade in school; there is no indication she has earned a GED. Tr. 266.

Plaintiff's disability report indicates she stopped working in 2006 because she missed work due to being incarcerated. Tr. 265. She indicated she believed her conditions became severe enough to prevent her from working on January 1, 2011. Tr. 265. Plaintiff testified at the August 2016 administrative hearing that her conditions included depression, anxiety, fatigue, and poor memory. Tr. 76-78.

Plaintiff testified she lived in a home with her disabled husband and three children, ages 18, eight and five, and was pregnant at the time of the August 2016 administrative hearing. Tr. 67-68. With respect to household responsibilities, Plaintiff stated she did not do anything other than cook "every once in a while." Tr. 69, 76. However, she also indicated she was responsible for taking her children to medical appointments. Tr. 69-70.

Plaintiff testified she had not had mental health treatment since April of 2015. Tr. 69. She explained she put herself on the back burner and had not gotten around to accessing healthcare for her issues, despite a lack of financial barriers to receiving such treatment. Tr. 70-71. Plaintiff admitted mental health treatment had been helpful in the past, but also stated she did not see the point of it the majority of the time. Tr. 72. Plaintiff further admitted there was a time when prescribed medication helped with her symptoms, but she just chose to quit taking

the medication. Tr. 73, 75.  She stated she had not been taking any medications "for a while." Tr. 74.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of

entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On September 7, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the disability application date, July 3, 2013. Tr. 22. At step two, the ALJ determined Plaintiff had the following severe impairments: depression; anxiety disorder, NOS; and personality disorder. Tr. 22. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 23.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to unskilled and semi-skilled work; she can have only occasional, superficial contact with the public; and she cannot perform work at a production rate pace. Tr. 24-25.

At step four, the ALJ determined Plaintiff was not capable of performing her past relevant work as a taproom attendant. Tr. 30. At step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of

fish cleaner, dining room attendant, and kitchen helper. Tr. 30-31. The ALJ additionally determined that if Plaintiff was further restricted to light exertion level work with the same nonexertional limitations, she would still be able to perform other jobs present in significant numbers in the national economy, including the jobs of cleaner, housekeeping; sorter, agricultural produce; and marker, price. Tr. 31. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the disability application date, July 3, 2013, through the date of the ALJ's decision, September 7, 2016. Tr. 32.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff frames the issues for the Court's review as follows: A. Did the ALJ improperly discredit Plaintiff's symptom claims?; B. Did the ALJ fail to properly consider and weigh the opinion evidence?; C. Were the errors harmless?; and D. What is the proper remedy? ECF No. 14 at 8.

## DISCUSSION[1]

**A.　Plaintiff's Symptom Testimony**

Plaintiff first contends the ALJ erred by improperly discrediting her symptom claims. ECF No. 14 at 9-11.

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the evidence of record. Tr. 26.

The ALJ first indicated the objective medical evidence of record did not support the level of limitation Plaintiff claimed. Tr. 26.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

The ALJ determined that although Plaintiff had a medically documented history of depression, anxiety and personality disorder, the record did not support a finding that these conditions prohibited Plaintiff from performing all work. Tr. 26. The ALJ's statement in this regard is supported by the evidence of record which reflects largely unremarkable medical findings. *See e.g.* Tr. 391 (June 2013 examination record of John Arnold, Ph.D., observing all categories of mental functioning, other than memory, mood and affect, were within normal limits), Tr.

399 (May 2013 Frontier Behavioral Health progress note reflecting Plaintiff's mental status as unremarkable other than limited insight and judgment), Tr. 452, 456, 459, 461 (March, April, May, and October 2014 Community Health Center of Snohomish County (CHC) notes indicating Plaintiff was properly oriented and displayed appropriate mood and affect), Tr. 475, 478, 484 (January 2015 CHC notes reflecting Plaintiff mental status as generally within normal limits). Moreover, as indicated by the ALJ, Tr. 26, state agency reviewing psychological consultants concluded on September 16, 2013, and December 17, 2013, that Plaintiff's mental impairments produced mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Tr. 87-90, 98-101. They opined that Plaintiff retained the capacity to understand and remember simple and complex instructions on a consistent basis in a competitive work environment; was able to consistently remember work locations and work-like procedures; could carry out simple and some complex tasks; and was able to maintain concentration, persistence and pace for up to two hours continuously, maintain adequate attendance and complete a normal workday and workweek within normal tolerances of a competitive workplace. *Id*. The examination of Plaintiff on September 11, 2014, by Dana Harmon, Ph.D., was also largely unremarkable. Tr. 27, 536-538. Dr. Harmon found only mild and moderate limitations on Plaintiff's basic work activities and concluded Plaintiff "should [be] able to return to work within six months or so, with vocational rehabilitation efforts and a continued abstinence from drugs and alcohol." Tr. 533. Furthermore, medical expert Marian F. Martin, Ph.D., testified at the August 2016 administrative hearing that Plaintiff's mental impairments produced no restrictions in activities of daily living, mild-to-moderate difficulties in maintaining social functioning, mild-to-moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Tr. 27, 60-

62. Dr. Martin opined Plaintiff was capable of performing simple, routine, repetitive tasks and some semi-skilled detailed tasks; could get along with coworkers and supervisors, but should have only superficial public contact; and was limited to no production rate pace. Tr. 27, 63-65.

As indicated by the ALJ, the objective medical evidence of record does not support the disabling symptoms and limitations alleged by Plaintiff in this case. Tr. 26-27. This was a proper basis for the ALJ to conclude Plaintiff was not entirely credible.

The ALJ next indicated the record reflected medication was helpful in improving Plaintiff's mental health symptoms. Tr. 26.

The effectiveness of medication in alleviating symptoms is a relevant factor to consider in evaluating the severity of a claimant's claim. 20 C.F.R. § 416.929(c)(3)(iv); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (impairments controlled by treatment cannot be considered disabling).

Community Heath Association of Spokane (CHAS) medical notes reflect that Plaintiff's medications were helpful in improving her mood, Tr. 375 (Prozac was helping), Tr. 377 (Prozac helping her mood), Tr. 379 ("clearly appreciated benefit in mood and energy level" after taking Prozac for over a month). Tr. 26. As indicated above, Plaintiff testified at the August 2016 administrative hearing that prescribed medication had previously helped with her mental health symptoms, but she simply chose to quit taking the medication and had not been taking any prescribed medications "for a while." Tr. 73-75.

The foregoing evidence that Plaintiff's mental health issues improved with medication additionally supports the ALJ's adverse credibility determination.
///

The ALJ also described Plaintiff's inconsistent reporting as detracting from her credibility. Tr. 26-28.

In assessing the weight accorded to a claimant's statements, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering a claimant's reputation for truthfulness and inconsistencies in a claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When a claimant fails to be a reliable historian, "this lack of candor carries over" to other portions of her testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

As noted by the ALJ, while Plaintiff alleged disabling social limitations, Tr. 280 ("I don't want to talk to people at all"), Tr. 322 ("I don't talk to people unless forced"), Frontier Behavioral Health progress notes consistently describe Plaintiff as functioning well from a social standpoint, Tr. 406 (Plaintiff's "affect was bright and engaging with others in group"), Tr. 409 (Plaintiff "encouraged other group members to participate and talk, and she tried to initiate conversations within the group appropriately"), Tr. 411, 413, 414, 415, 417, 418, 419, 422 (Plaintiff's affect was bright, pleasant, and engaging while interacting with others in group). Tr. 26. Plaintiff reported she liked her group therapy sessions and enjoyed interacting with group members. Tr. 28, 403, 409. The ALJ also indicated Plaintiff reported she liked going to church, liked to talk to friends and family on the phone, had at least once close friend, and talked to her sister on a daily basis. Tr. 28, 397, 399, 400. Plaintiff's allegations of social limitations are thus inconsistent with, and not supported by, the evidence of record.

As further noted by the ALJ, although Plaintiff testified her husband and oldest child handle all the household chores/childcare and she has virtually no daily activities, Tr. 67-69, 76, Plaintiff's function reports indicate daily activities of child care; personal care; preparing meals; cleaning; doing the dishes, laundry and vacuuming; shopping; attending church; and communicating with friends on

Facebook, Tr. 277-279, 318-321. Tr. 27. Therefore, Plaintiff's testimony regarding her daily activities was also inconsistent.

It was entirely proper for the ALJ to note the foregoing inconsistencies in finding Plaintiff's subjective complaints less than fully credible in this case.

The ALJ additionally indicated Plaintiff reported reasonably high-functioning activities of daily living which showed greater functional abilities than alleged. Tr. 27-28.

It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While one does not need to be "utterly incapacitated" to be disabled, *id.*, it was proper for the ALJ to find Plaintiff's reports of activities such as those previously mentioned (child care; personal care; preparing meals; cleaning; doing the dishes, laundry and vacuuming; shopping; attending church; and communicating with friends on Facebook), as well as her ability to attend church, develop a relationship and get married, live with family and get appropriate prenatal care, Tr. 28, were inconsistent with the debilitating limitations she alleged[2] and thus detracted from her overall credibility. *See Smith v. Comm'r Soc. Sec. Admin.*, 611 Fed. Appx. 897, 900 (9th Cir. 2015) (affirming the ALJ's adverse credibility determination and noting the ALJ found the claimant's testimony was contradicted by "her own description of helping with" the "care of children" and household chores); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming the ALJ's adverse credibility determination and noting that the claimant's claim of disability was undermined by testimony about her daily activities, such as "attending to the needs

---

[2]Plaintiff alleges disability since 2011, due to depression, anxiety and Hepatitis C, Tr. 265, and testified that, because she feels helpless, she is not able to do anything other than the bare minimum with respect to household responsibilities, Tr. 69-70, 76.

of her two young children," cooking, and shopping); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

The ALJ found Plaintiff's infrequent mental health treatment also diminished her credibility. Tr. 28.

In assessing a claimant's credibility, an ALJ properly relies upon "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284); *Fair*, 885 F.2d at 603. "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p. An "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

As noted by the ALJ, Plaintiff received limited mental health treatment during the relevant time period in this case, and, as determined by the ALJ, Plaintiff provided no good explanation for this lack of mental health treatment, Tr. 70-71 (Plaintiff explained she put herself on the back burner and had simply not gotten around to accessing healthcare for her issues, despite a lack of financial barriers to receiving such treatment). Tr. 28.

The Court finds the ALJ did not err by relying, in part, upon Plaintiff's minimal mental health treatment in concluding Plaintiff's subjective complaints were less than fully credible.

The ALJ additionally mentioned Plaintiff's "minimal work history." Tr. 28. The Ninth Circuit has held that "poor work history" or a showing of "little propensity to work" during one's lifetime may be considered as a factor which negatively affects a claimant's credibility. *Thomas*, 278 F.3d at 959. The ALJ indicated Plaintiff's limited work history (she had not worked at all since 2008, five years before she submitted her application for disability benefits) called into question whether it was Plaintiff's medical impairments or other factors (*see* Tr. 388 (childcare and transportation issues)) that caused her to seek disability. Tr. 28. Given the record supports the ALJ's finding in this regard (limited work history), it was proper for the ALJ to note Plaintiff's "minimal work history" when assessing her credibility in this case.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible in this case.

**B.    Medical Source Opinions**

Plaintiff next argues the ALJ erred by failing to accord weight to the marked mental health limitations assessed by John Arnold, Ph.D., and by not finding the "moderate" mental limitations observed by Dana Harmon, Ph.D., were work-preclusive. ECF No. 14 at 11-15.

///

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes*, 881 F.2d at 751. Moreover, the ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

1. **Dr. Arnold**

On June 21, 2013, Dr. Arnold filled out a Psychological/Psychiatric Evaluation form and checked boxes indicating Plaintiff was markedly impaired in five categories of basic work activities. Tr. 387-391. It was noted that Plaintiff had been clean and sober for nine months but relapsed on alcohol and methamphetamine four months prior to the evaluation and relapsed again four weeks prior to the evaluation. Tr. 387. Plaintiff reported she would like to work, but a lack of daycare and transportation was a barrier to employment. Tr. 388. Dr. Arnold opined that while Plaintiff was presently not capable of working, looking for work or training to work, she did not appear to be permanently disabled. *Id*.

The ALJ assigned "little weight" to the marked limitations assessed by Dr. Arnold on the form report. Tr. 29. The ALJ indicated the report was cursory; internally inconsistent; inconsistent with the assessments of Dr. Martin, Dr. Harmon and the state agency medical consultants; inconsistent with the largely benign mental status findings documented in the record; and inconsistent with Plaintiff's admitted daily activities. Tr. 29. The ALJ also noted the exam occurred slightly outside the adjudicative period and it was evident Plaintiff was still using substances at the time of the evaluation. Tr. 29.

The Court agrees that the report of Dr. Arnold slightly predates the relevant time period[3] in this matter. Evidence from outside of the relevant time period can be deemed useful as background information; however, it is irrelevant to the extent that it does not address Plaintiff's medical status during the relevant period at issue in this action. *See Fair*, 885 F.2d at 600.

The Court finds the ALJ correctly determined that the marked limitations assessed by Dr. Arnold on the check-box form are internally inconsistent with Dr. Arnold's mental status exam findings. *See Tommasetti*, 533 F.3d at 1041 (holding that the existence of internal inconsistencies within a physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that physician's opinion concerning the claimant's functional limitations). Dr. Arnold's mental status exam reflected that all categories of mental functioning, other than memory, mood and affect, were within normal limits. Tr. 391. Dr. Arnold's assessed marked limitations were thus inconsistent with his own essentially normal examination findings.

///

---

[3]Plaintiff is ineligible for SSI disability benefits for any month including and preceding July 2013, the month she filed her SSI disability application. 20 C.F.R. § 416.330, 416.335; SSR 83-20.

The marked limitations are also inconsistent with the largely unremarkable medical findings documented throughout the record. *See e.g.* Tr. 399 (May 2013 Frontier Behavioral Health progress note reflecting Plaintiff's mental status as unremarkable other than limited insight and judgment), Tr. 452, 456, 459, 461 (March, April, May, and October 2014 Community Health Center of Snohomish County (CHC) notes indicating Plaintiff was properly oriented and displayed appropriate mood and affect), Tr. 475, 478, 484 (January 2015 CHC notes reflecting Plaintiff mental status as generally within normal limits). Moreover, the marked limitations are unsupported by the findings of other medical professionals of record: the state agency reviewing psychological consultants opined that Plaintiff retained the capacity to understand and remember simple and complex instructions on a consistent basis in a competitive work environment; was able to consistently remember work locations and work-like procedures; could carry out simple and some complex tasks; and was able to maintain concentration, persistence and pace for up to two hours continuously, maintain adequate attendance and complete a normal workday and workweek within normal tolerances of a competitive workplace, Tr. 87-90, 98-101; Dr. Harmon found only mild and moderate limitations on Plaintiff's basic work activities and concluded Plaintiff "should [be] able to return to work within six months or so, with vocational rehabilitation efforts and a continued abstinence from drugs and alcohol," Tr. 531-552; and medical expert Martin found Plaintiff was capable of performing simple, routine, repetitive tasks and some semi-skilled detailed tasks; could get along with coworkers and supervisors, but should have only superficial public contact; and was limited to no production rate pace, Tr. 63-65.

Finally, with respect to Plaintiff's daily activities, Plaintiff's ability to care for her children, complete daily tasks, attend her appointments, go to church, drive, go shopping, and participate in group sessions, was also inconsistent with Dr. Arnold's assessed marked limitations.

Based on the foregoing, the Court finds the marked psychological limitations assessed on the check-box portion of Dr. Arnold's report are entirely unsupported and inconsistent with the weight of the record evidence. The ALJ provided specific and legitimate reasons, supported by substantial evidence, for according little weight to the check-box opinions of Dr. Arnold.

### 2. Dr. Harmon

On September 11, 2014, Dr. Harmon performed a psychological/psychiatric evaluation of Plaintiff. Tr. 531-552. Dr. Harmon opined that Plaintiff had moderate mental limitations in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently.[4] Tr. 533. Dr. Harmon concluded that Plaintiff's limitations were expected to last

---

[4]This opinion is in accord with the assessments completed by the state agency medical consultants, Tr. 87-90, 98-101 (finding Plaintiff retained the capacity to understand and remember simple and complex instructions on a consistent basis in a competitive work environment; was able to consistently remember work locations and work-like procedures; could carry out simple and some complex tasks; and was able to maintain concentration, persistence and pace for up to two hours continuously, maintain adequate attendance and complete a normal workday and workweek within normal tolerances of a competitive workplace), and the testimony of medical expert Martin, Tr. 63-65 (finding Plaintiff was capable of performing simple, routine, repetitive tasks and some semi-skilled detailed tasks; could get along with coworkers and supervisors, but should have only superficial public contact; and was limited to no production rate pace).

only six months,[5] finding Plaintiff should be able to return to work within six months with vocational rehabilitation efforts and a continued abstinence from drugs and alcohol. Tr. 533.

The ALJ accorded Dr. Harmon's opinions "great weight," and accounted for the moderate limitations assessed by Dr. Harmon by finding Plaintiff limited to unskilled and semi-skilled work with only occasional, superficial contact with the public and no work at a production rate pace. Tr. 24-25. This finding is supported by the weight of the record evidence.

While Plaintiff contends that the moderate limitations from Dr. Harmon's report would signify Plaintiff was "limited a third of the day," Tr. 81, there is no basis for that contention in the form or the report, Tr. 29. The Court finds that the assessment of moderate limitations simply show that the medical professional acknowledged Plaintiff's capacity was impaired in those areas of functioning. Dr. Harmon's opinion regarding Plaintiff's actual mental functional capacity is reflected in the narrative sections of the report. The narrative report indicates Dr. Harmon's opinion that Plaintiff did not appear appropriate for SSI/SSDI facilitation and would be able to return to work within six months with vocational rehabilitation and continued abstinence from drugs and alcohol. Tr. 533.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings

---

[5]The assessed limitations would thus not meet the duration requirements of the Social Security Act (one year). *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an individual shall be considered disabled if she has an impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months).

justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision. *Fair*, 885 F.2d at 604.

Having reviewed the ALJ's evaluation of the medical evidence, the Court finds the ALJ's interpretation was based on substantial evidence, and the ALJ supported his findings with specific and legitimate reasoning.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED February 12, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE